**COTTON BELT RAILROAD, Appellant,**

v.

**Gary HENDRICKS, Appellee.**

No. 9645.

Court of Appeals of Texas, Texarkana.

March 28, 1989.

Roy I. McCutcheon, Houston, for appellant.

Clyde Lee, Texarkana, for appellee.

PER CURIAM.

Gary Hendricks brought this action against the Cotton Belt Railroad (hereafter referred to as "the Railroad") and twenty-one individually named defendants. He alleged defamation, libel, conspiracy and interference with contractual relationships. The cause went to the jury only on the theory of libel, and Hendricks requested damages based upon loss of earnings and mental anguish.

The Railroad contends that the trial court erred in hearing the case and in overruling its judgment non obstante veredicto and motion for new trial because the cause of action is pre-empted by the Railway Labor Act, 45 U.S.C.A. § 151, et seq. (1986). The Railroad further contends that the trial court erred by submitting the issues on libel and damages to the jury and rendering judgment on the jury's answers to the issues. This complaint is based upon the contention that the issue on libel contained an internal conflict which amounted to a comment on the weight of the evidence and also permitted the jury to find that while none of the Railroad's employees or its agents libeled Hendricks, the Railroad did. The Railroad also contends that there was

no evidence or insufficient evidence that the Railroad libeled Hendricks and that there was no evidence or insufficient evidence to support the jury finding of damages. The Railroad further argues that the court's admission of testimony about a 1979 investigation of Hendricks over the Railroad's objection of irrelevancy constitutes reversible error.

Gary Hendricks had been employed by Cotton Belt Railroad from approximately 1967 through 1986. During the first part of that period of time, he was transferred from one job station to another along the Railroad. According to the testimony, including that of two psychologists, Hendricks had several character traits which were irritating to his co-workers. Witnesses testified that he worked as a clerk, but dressed in a three-piece suit while his co-workers wore jeans, and that he was an absolute perfectionist and a stickler for observing all rules. One of his co-workers testified that Hendricks always considered himself better than the rest of the workers and was always preaching to them about using bad language and drinking. Hendricks had reported several co-workers for rule violations and for being intoxicated on the job. His supervisor was one of the workers whom he reported for intoxication.

In October of 1983, a formal investigation was conducted under the collective bargaining agreement on an allegation that Hendricks and yardmaster Hamilton had violated two rules by being quarrelsome, otherwise vicious and entering into boisterous and profane language in the Texarkana yard office. Because of the rules violation, Hendricks and Hamilton were suspended for sixty days.

Several months after his return to work, a petition was circulated which reads as follows:

We, the undersigned employees of the Cotton Belt RR at Texarkana and other points wish to complain that Clerk Mr. G.D. Hendricks is causing numerous problems.

He is always using abusive language, is vicious, quarrelsome, and causes trouble on any shift he works. He has on numerous occasions caused everyone to be irritated and uneasy due to his undue accuations (sic) and we feel he has interminent (sic) periods of mental instability. We the undersigned do strongly request that this man and his problems be delt (sic) with immediately before futher (sic) problems develop.

The petition contained the stamp of the general yardmaster, L.D. Hamilton, and was signed by approximately sixty co-workers, including Hamilton.

At approximately the same time, a lengthy and rather sarcastic poem appeared on a bulletin board and on Hendricks' desk, which he believed was written and placed there for the purpose of bringing him into ridicule. The poem did not mention him by name and there was no evidence as to the identity of the writer or the identity of the person who put it there.

The jury found that none of the numerous individuals cited had libeled Hendricks, but that the Railroad had. The jury further found that Hendricks was damaged in the amount of $50,000 for past and future mental anguish and past and future loss of earnings. The attorney for all defendants objected to the charge only on the ground that there was no evidence to support an affirmative finding on any of the issues.

■ The initial question is whether this cause of action has been pre-empted by federal statute. The Railroad contends that the Railway Labor Act and the cases which have applied it provide that this cause is pre-empted by federal law.[1]

---

1. The application paragraph of the Act reads as follows:
    First. Duty of carriers and employees to settle disputes
    It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

The Railway Labor Act could not act to pre-empt litigation between Hendricks and his co-workers. The Act specifies that it applies to all disputes *between the carrier and employees* arising out of the application of employment agreements or otherwise. The plain language of the Act does not pre-empt an action between employees.

Although the Railroad's contentions are made under the Railway Labor Act, a number of the cases cited hereafter refer to the National Labor Relations Act, 29 U.S.C.A. § 151, et seq. (1973 & Supp.1988). This Act is similar in purpose to the Railway Labor Act, and the United States Supreme Court has determined that we may refer to the National Labor Relations Act for assistance in construing the Railway Labor Act. *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969). The Railroad argues that the plain language of the Act requires Hendricks to bring any grievance to the National Railroad Adjustment Board because it involves a dispute "arising out of the application of such agreements or otherwise ... or growing out of any dispute between the carrier and the employees thereof." In a series of cases concerning the National Labor Relations Act, the Supreme Court has provided exceptions to pre-emption for several classes of situations. The Court has specifically held that state jurisdiction to enforce its laws prohibiting violence, defamation, the intentional infliction of emotional distress, or obstruction of access to property is not pre-empted by the National Labor Relations Act. *Sears Roebuck & Co. v. Carpenters*, 436 U.S. 180, 204, 98 S.Ct. 1745, 1761, 56 L.Ed.2d 209, 229 (1978); *Beers v. Southern Pacific Transportation Co.*, 703 F.2d 425 (9th Cir.1983). Defamation is specifically addressed in *Linn v. United Plant Guard Workers*, 383 U.S. 53, 61, 86 S.Ct. 657, 662, 15 L.Ed.2d 582, 589 (1966). In the context of a battle between unions, the Court stated that libel was not

pre-empted by the Act because it was merely a peripheral concern. The Court went on to restrict actionable libel to that "issued with knowledge of its falsity, or with reckless disregard of whether it was true or false," and it added, "Moreover, we believe that 'an overriding state interest' in protecting its residents from malicious libels should be recognized in these circumstances." The Court concluded that the state's concern with redressing malicious libel is so deeply rooted in local feeling and responsibility that it fits within the exceptions specifically carved out by *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), which had restricted the scope of the exception to intimidation and threats of violence.[2]

The defamation/libel exception to federal pre-emption was further examined by the Court in *Farmer v. Carpenters*, 430 U.S. 290, 300, 97 S.Ct. 1056, 1063, 51 L.Ed.2d 338, 350 (1977). The Court discussed *Linn* once again in the context of "the free discussion characteristic of labor disputes" and summarized the preceding cases by stating that they

reflect a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation.... [O]ur cases "demonstrate that the decision to pre-empt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies."

The Court continued its analysis by noting that no provision of the National Labor Relations Act protected the "outrageous conduct, threats, intimidation, and words" complained of by the petitioner and that the state has a substantial interest in protecting its citizens from the kind of abuse

---

**2.** A Texas appellate court discussed the pre-emption doctrine and the application of *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), to the Railway Labor Act in *Manchester v. International Association of Machinists*, 567 S.W.2d 623 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979). That case was directly on point with the situation in *Linn*, where parties to labor disputes were circulating false and defamatory statements during a union organizing campaign.

of which the petitioner complained. The Court then balanced the potential for interference with federal concerns against the legitimate and substantial interest of the state in protecting its citizens. The Court concluded that Congress did not intend to oust state court jurisdiction over actions for tortious activity such as that alleged in *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338.

Sections 7 and 8 of the National Labor Relations Act, as cited by that Court, are more restrictive in their application than the parallel sections of the Railway Labor Act. The National Labor Relations Act is more specifically aligned with the rights of employees to organize, the types of collective bargaining that are permissible, and the particular types of unfair labor practices that are condemned. Although the purposes of one may be similar to the purposes of the other, the language of the Acts is measurably different.

Hendricks cites one case in direct support of his argument that the Railway Labor Act does not pre-empt state court jurisdiction over a claim of intentional infliction of emotional distress. In *Gulati v. Burlington Northern Railroad Co.,* 364 N.W.2d 446 (Minn.App.1985), *aff'd* 390 N.W.2d 743 (Minn.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987), that certified question was presented by the trial court to an appellate court for consideration. Its answer was specifically affirmed by the Minnesota Supreme Court. The court held that although charges and investigations by an employer are governed by the collective bargaining agreement and thus are within the exclusive jurisdiction of the Railway Labor Act, the outrageous conduct of individual members of Burlington management toward Gulanti (ethnic slurs, repeated statements that they "were going to get him") were not the sort of prohibited activity envisioned by the collective bargaining agreement. The court further held that Gulati's allegations of outrageous conduct were not part of the charge which had led to his discharge from service and therefore were not pre-empted by the Railway Labor Act.

We conclude that the cause is not pre-empted by federal statutory law. The purpose of the Railway Labor Act, as well as the National Labor Relations Act, is to encourage the flow of interstate commerce and to regulate labor disputes. To achieve that aim, the federal government has provided guidelines for the utilization of collective bargaining agreements. The present case does not involve a conflict between a carrier and a union or other employee group. It is rather a conflict between one employee and other employees and the carrier. The present case has nothing to do with the operation of the Railroad in its broadest sense or the relationship between the Railroad and any recognizable group of its employees, or with the employment agreements between the union and the carrier. We find no likelihood of interference with federal concerns and believe that libel as alleged in this cause is outside the scope of the Railway Labor Act. The state's interest in protecting its citizens from this kind of abuse is not addressed by the federal statute.

■ The Railroad next contends that the trial court erred in submitting the special issue on libel to the jury because it amounted to a comment on the weight of the evidence. The Railroad objected to the charge only on the ground that there was no evidence to support an affirmative finding by the jury. This objection is insufficient to preserve error on the other grounds which the Railroad now wishes to argue. *Bundick v. Weller,* 705 S.W.2d 777 (Tex.App.—San Antonio 1986, no writ); Tex.R.Civ.P. 274; Tex.R.App.P. 52(c)(3).

■ The Railroad further contends that there is no evidence or insufficient evidence to support the submission of the special issue on libel to the jury. The contention that an issue should not have been submitted because of the insufficiency of the evidence is subject only to the construction that there was no evidence to warrant submission of the issue. *Reina v. General Accident Fire and Life Assurance,* 611 S.W.2d 415 (Tex.1981). In applying the no evidence test, we must consider only the evidence and the reasonable inferences

therefrom which, viewed in the most favorable light, support the plaintiff's issues, and we must reject all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

The Railroad argues that as a corporation it can only act through its agents or employees, and as the jury found that none of those agents or employees were guilty of libelous conduct, the Railroad cannot have libeled Hendricks. This amounts to a contention of conflicting jury findings. These findings seem to be irreconcilable, and Hendricks has offered no possible basis for reconciliation. In a case where there exists irreconcilable conflicts in the jury's answers, the case should be remanded for a new trial. *Insurance Company of North America v. Brown*, 394 S.W.2d 787 (Tex.1965). This, however, is not a basis for finding that there was no evidence offered on the corporation's libelous conduct.

The Railroad's contention that Hendricks failed to allege that individuals were acting within the scope of their authority as agents of the corporation has no merit. Hendricks' petition states that the agent's employees or servants of the Railroad who libeled him were specifically "the same defendant (sic) that are herein named," and that while acting in the course and scope of their employment they published the "malicious and defamatory statements that are described in the petition itself." The allegation can be reasonably read to contend that the individuals were acting within the scope of their employment as agents of the Railroad when they published the libelous statements.

The Railroad also correctly points out that Hendricks did not obtain a jury finding on agency; however, if there is evidence to support a finding that an employee libeled Hendricks while acting in the scope of employment, in absence of an appropriate objection to the charge, we would be bound to deem that fact to have been found in favor of the verdict. Tex.R.Civ.P. 279.

The very nature of a corporation is that it must act through its officers or its agents. *Corpus Christi Development Corp. v. Carlton*, 644 S.W.2d 521 (Tex.App.—Corpus Christi 1982, no writ); *Norton Refrigerated Express v. Ritter Bros. Co.*, 552 S.W.2d 910 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.). The rule is that a corporation may be held liable for defamation by its agent if such defamation is referable to the duty owing by the agent to the corporation and was made in the discharge of that duty. *Texam Oil Corp. v. Poynor*, 436 S.W.2d 129 (Tex.1968). Thus, Hendricks had the burden of proving that he was libeled by an agent of the Railroad in his discharge of some corporate duty. *Wells v. Shop Rite Foods, Inc.*, 474 F.2d 838 (5th Cir.1973). Under Texas law, the actions of an agent are not presumed to be within the scope of his authority. *In re Westec Corp.*, 434 F.2d 195 (5th Cir.1970).

We look now to the specific evidence to see if any of it shows that any libelous act was done by an agent of the Railroad within the scope of his or her authority. In the petition to remove Hendricks, each signatory also listed his or her working classification with the Railroad, but the mere fact of employment is not evidence that any one of the individuals acted within the scope of his or her authority as an agent of the Railroad by signing the petition. The petition was stamped with the yardmaster's seal, but there is no proof of who actually wrote or stamped the document, or that the stamping of the document had any particular significance, or that the yardmaster was in any way authorized to approve such a document. There was testimony that a number of people had access to the yardmaster's seal. There is no evidence to suggest that the anonymous poem which appeared on Hendricks' desk was written and placed there with the consent or approval of an agent of the Railroad. There was evidence that two internal memoranda were sent out by the Railroad to certain employees informing them that "If asked, you did not sign the petition while on duty ... to Cotton Belt." To the extent that this was an attempt to influence employees' testimony, this is reprehensible, but it

does not constitute evidence that the employees signed the petition while acting within the scope of their duties for the Railroad. In the absence of any proof that Hendricks was libeled by a person or persons acting on behalf of the Railroad, the Railroad could not have libeled Hendricks.

Because of our determination on the foregoing issues, we do not address the other points raised by the Railroad. We reverse and render judgment in favor of the Railroad.