**Donald Ray ADAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–92–00392–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 25, 1993.

Acie Craig McAda, New Braunfels, for appellant.

W.C. Kirkendall, Cr. Dist. Atty. and Frank Follis, Asst. Dist. Atty., Seguin, for appellee.

Before PEEPLES, GARCIA and JOHN F. ONION, Jr.[1], JJ.

## OPINION

JOHN F. ONION, Jr., Justice (Assigned).

This is an appeal from a conviction for burglary of a habitation. After the jury found appellant guilty, the trial court assessed his punishment at twenty years' imprisonment.

Appellant advances five points of error. First, he challenges the sufficiency of the evidence to sustain his conviction. Second, appellant urges that the "trial court erred in failing to dismiss the jury array due to the fact the State used peremptory challenges in a racially discriminatory fashion." Third, appellant argues that the trial court erred in failing to dismiss the jury array due to the State's discriminatory use of peremptory challenges to exclude women from the jury. Fourth, appellant claims the trial court erred by giving a limiting instruction regarding the testimony of Maria P. Hernandez, a defense witness. Fifth, appellant contends that the limiting instructions were improper comments on the weight of the evidence.

Max Gross, the complaining witness, testified that on November 14, 1991, he lived at 403 Vera Cruz Street in Seguin. Gross knew appellant who lived across the street. Appellant had helped Gross move in the home at 403 Vera Cruz Street about three months earlier. Appellant did not have Gross' permission to be in the Gross house on November 14, 1991. When Gross left his house at 2 p.m. on that date, he observed appellant sitting across the street. When Gross returned home about 7 p.m. he found the police there, discovered that his house had been broken into, and that a television set, a lamp, and cassette radio were missing. Sometime after the burglary of his habitation, Gross was told by appellant that he would go with Gross to the police and tell them where Gross' missing

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T.CODE ANN. § 74.003(b) (Vernon 1988).

property was located. This never occurred and Gross never recovered his property.

Dominga Rodriguez testified that about 3:30 p.m. on November 14, 1991, she was in the backyard of her house on East Walnut Street hanging clothes when she heard a bang "like they kicked the door open." When she looked up, Rodriguez saw appellant running from the house on Vera Cruz Street carrying a cassette player/radio and running to his own house. Rodriguez had seen appellant at his house during the eight months she had lived on East Walnut Street. She related that at the time in question appellant was wearing a blue T-shirt with "Motorola" written on it and blue jeans.

After Rodriguez had gone back inside her house, she observed a Mexican man come out of appellant's home and go to the house on Vera Cruz Street. She then saw the Mexican man come out of the house of the complaining witness with a television set. He then approached appellant's house yelling for someone to open the door. When the door opened, Rodriguez saw the Mexican man go into appellant's house. Being scared, Rodriguez waited about a hour and a half before calling the police.

Seguin Police Officer Jim Boeck responded to Rodriguez's call about 5 p.m. He talked to Rodriguez and then went to 403 Vera Cruz which was located directly behind the Rodriguez house. The front door had been splintered and the house had been ransacked. Officer Boeck then went to appellant's house, and a woman, who Boeck assumed to be appellant's mother, gave consent for Boeck to look into the house. At the time, Boeck did not know what kind of property was missing. When Boeck was leaving, appellant walked up. He was dressed as described by Rodriguez. Appellant denied knowing anything about a burglary at the Gross' house.

■ The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Valdez v. State,* 776 S.W.2d 162, 165 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). The standard for review is the same in both direct and circumstantial evidence cases. *Herndon v. State,* 787 S.W.2d 408, 409 (Tex. Crim.App.1990); *see also Geesa v. State,* 820 S.W.2d 154, 158 (Tex.Crim.App.1991).[2]

■ Appellant argues that there is no direct evidence that he broke and entered the Gross' house. Dominga Rodriguez did not see appellant enter the house at 403 Vera Cruz. Appellant notes that the evidence shows that anyone entering the front door of the Gross house would have to cross one room and enter a bedroom in order to reach the location of the missing cassette/radio on the far side of the bedroom. Appellant contends that Rodriguez heard a "bang" and almost immediately looked up and saw appellant in the Gross yard carrying a cassette/radio. Appellant argues that it would have been impossible for him to have entered the house with a "bang," obtain the cassette/radio and be in the yard when Rodriguez saw him almost immediately after hearing the "bang." This argument assumes the fact that the "bang" was noise made in entering the house rather than in exiting the house or from some other source. Further, the evidence shows that the house in question was small and that appellant had been in the house on a prior occasion and was familiar with the interior of the house.

■ The jury is the trier of fact, the judge of the credibility of the witnesses, and the weight to be given to the testimony. TEX. CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979). The jury is entitled to accept or reject all or any part of the testimony given by the witnesses for the State and the accused. *See Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987); *Castellano v. State,* 810 S.W.2d 800, 807 (Tex.App.—Austin 1991, no pet.).

2. *Geesa* abolished the reasonable hypothesis analytical construct of innocence doctrine formerly used in circumstantial evidence cases. *Geesa* was not to be applied retroactively, but the instant case is a post-*Geesa* case and *Geesa* is applicable.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt the essential elements of burglary of a habitation as charged. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in failing to dismiss the jury array due to the fact that the State used peremptory challenges in a racially discriminatory fashion.

Following the voir dire examination of the jury panel and after the peremptory challenges or strikes had been made by each party, appellant objected to the State's use of its peremptory challenges to strike minority members of the jury before the jury was sworn and empaneled. Appellant asked for a *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), hearing. *See also* TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989).

 The State's exercise of peremptory challenges for purely racial reasons violates the Equal Protection Clause of the United States Constitution. *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965). In *Batson*, the Supreme Court recognized that a defendant in a criminal case may make a prima facie showing of purposeful racial discrimination in jury selection by relying solely on the facts concerning the jury's selection in his case. In order to establish a prima facie case, the defendant under *Batson* must show the following: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the jury panel; and (3) that these facts and any other relevant circumstances raise an inference that

the prosecutor used that practice to exclude the veniremen from the jury on account of their race. In addition, the defendant can rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who have a mind to discriminate. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim.App.1987) (*Keeton I* ).

 *Powers v. Ohio*, 499 U.S. 400, ——, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991), has extended the *Batson* holding to allow a defendant to challenge the State's peremptory strikes with regard to members of a race different from the race of the defendant. *See Salazar v. State*, 818 S.W.2d 405, 407–08 (Tex.Crim.App.1991); *State v. Oliver*, 808 S.W.2d 492, 496 (Tex.Crim.App.1991) (holding that article 35.261 was broad enough to encompass the rule in *Powers* ).

At the *Batson* hearing, appellant asserted that he was black and a member of an identifiable racial group. Appellant then orally complained, also without proof, that the State had struck three of the four Hispanics included within the first thirty-two qualified members of the jury panel. He identified these prospective jurors as Lucy Amador, Oralia Tavera, and Betty Velasquez Le.

 Without ruling on whether appellant had established a prima facie case under *Batson*, the trial court inquired of the prosecutor whether the State had any response. Without objection to the procedure, the prosecutor responded.[3] The prosecutor pointed out that the State had exercised only eight of its ten peremptory challenges. He explained that the State struck Betty Valasquez Le because she had a brother who had been charged with aggravated assault on a peace officer and the case was being prosecuted by his office. The prosecutor further explained

---

**3.** We need not determine whether appellant made a prima facie showing of racial discrimination as required by *Batson*. Appellate review should not become bogged down on the question of whether the defendant has made out a prima facie case unless the ruling on the prima facie case stops the fact-finding process. *See United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987); *Dewberry v. State*, 776 S.W.2d 589, 591 (Tex.Crim.App.1989). When the prosecutor has articulated his reasons for the challenged per-

emptory strike or strikes and the trial court has ruled on the ultimate question of intentional discrimination, this court will not review the issue of whether the defendant established a prima facie case. The question is moot. *Hernandez v. New York*, 500 U.S. ——, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992).

that seven of the State's eight strikes had been used against women because "the defendant in virtually any case" usually uses the majority of his strikes to challenge middle aged or older men and established businessmen in the community, and that he used the State's peremptory challenges or strikes "to even up the balance," assuming he (appellant) would strike a great number of men. The prosecutor noted there was a number of middle aged or older men on the panel and that he used the strikes for the stated reason and not because of any racially discriminatory reason. He observed that Amador and Tavera were among the six women struck to insure a balance; that he did not strike Richard Garza, a Hispanic who was selected as a petit juror, even though Garza knew appellant and his family; and that he did not strike Wilson, a black female venire member. The prosecutor further disclaimed any pattern of racially discriminatory strikes by the State. Appellant did not challenge the prosecutor's explanations in any manner. The trial court overruled the *Batson* motion.

■ Kinship to a person who has had trouble with the law is a racially neutral reason for striking a prospective juror. *Davis v. State*, 822 S.W.2d 207, 211 (Tex. App.—Dallas 1991, pet. ref'd); *Sims v. State*, 768 S.W.2d 863, 865 (Tex.App.—Texarkana 1989), *pet. dism'd per curiam*, 792 S.W.2d 81 (Tex.Crim.App.1990); *see also Lewis v. State*, 775 S.W.2d 13, 16 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd); *Munson v. State*, 774 S.W.2d 778, 779 (Tex.App.—El Paso 1989, no pet.). It thus appears that prospective juror Betty Velasquez Le was struck for a racially neutral reason.

■ Prospective jurors Amador and Tavera were among the six other women the State struck in order to achieve a better balance between men and women on the jury. In its brief, the State points out that the prosecutor's hunch was correct in that appellant used his peremptory challenges to eliminate from the jury male prospective jurors as follows: Huebinger, age sixty-nine; McLean, age fifty-nine; Jockimson, age fifty-nine; Hill, age sixty-four; Bowen, age fifty-nine; Rebecek, age fifty; and Crook, age fifty-four. In addition, appellant also struck

three of the women who had been peremptorily challenged by the State. Appellant concedes in his brief that the State provided race-neutral reasons for the strikes in that challenged prospective jurors were women, but contends that the explanations were not plausible.

■ The currently correct standard of review for claims that peremptory strikes were used in a racially discriminatory manner is the "clearly erroneous" standard. *Hill v. State*, 827 S.W.2d 860, 865–66 (Tex.Crim. App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Tennard v. State*, 802 S.W.2d 678, 681 (Tex.Crim.App.1990); *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex. Crim.App.1989) (opinion on rehearing). To determine whether the fact finder's decision is "clearly erroneous," appellate courts look to the record to see if they are left with the definite and firm conviction that a mistake has been committed. *Hill*, 827 S.W.2d at 865. In doing so, the evidence must be considered in the light most favorable to the trial court's rulings. *Id.* Further, unless racial discrimination against a venireperson is established by the party raising the claim, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution is not implicated. *Id.* at 868. We cannot say that the trial court's ruling on the *Batson* motion was clearly erroneous. Appellant's point of error number two is overruled.

In his third point of error, appellant contends that the "trial court erred in failing to dismiss the jury array due to the State's discriminatory use of peremptory challenges to exclude women from the jury."

Appellant candidly admits that while he objected to the State's use of peremptory challenges on the basis of race, he did not object to the discriminatory use of the State's strikes on the basis of gender. Thus, appellant waived any error for the failure to timely object. *See* Tex.R.App.P. 52(a). Appellant urges, however, that he meets the "novel constitutional theory" exception to the con-

temporaneous objection rule recognized and discussed in *Mathews v. State,* 768 S.W.2d 731, 733 (Tex.Crim.App.1989). Appellant notes that he has found no case law on the application of the Equal Protection Clause or the Texas Equal Rights Amendment to the issue of the State's use of peremptory challenges to exclude venire members on the basis of gender.

■■■■ If a constitutional claim is sufficiently novel, there is no procedural default in failing to make a contemporaneous objection at trial. *Mathews,* 768 S.W.2d at 733. Thus, where a defect of constitutional magnitude has not been established at the time of the trial, the failure of counsel to object does not constitute a waiver. *Id.; Ex parte Chambers,* 688 S.W.2d 483, 486 (Tex.Crim. App.1984), *cert. denied,* 474 U.S. 864, 106 S.Ct. 181, 88 L.Ed.2d 150 (1985). Appellant's trial was conducted in May 1992. To bring himself within the exception, appellant relies upon *Batson, Powers,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880). In *Mathews,* cited by appellant, the Court of Criminal Appeals held that *Batson,* did not create a new constitutional right such that a *Batson*-based claim could be considered novel and the contemporaneous objection rule inapplicable.

Moreover, the Fifth Circuit Court of Appeals has recently held that *Batson* does not extend to gender-based discrimination. *United States v. Broussard,* 987 F.2d 215, 220 (5th Cir.1993). *Accord: United States v. Hamilton,* 850 F.2d 1038, 1042 (4th Cir.1988), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990); *United States v. Nichols,* 937 F.2d 1257, 1262 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 989, 117 L.Ed.2d 151 (1992) (arguably deciding that *Batson* does not apply to gender); *State v. Culver,* 233 Neb. 228, 444 N.W.2d 662 (1989);

*State v. Oliviera,* 534 A.2d 867, 870 (R.I. 1987). *Contra: United States v. De Gross,* 960 F.2d 1433, 1438 (9th Cir.1992) (extending *Batson* to gender); *Tyler v. State,* 330 Md. 261, 623 A.2d 648, 653 (1993) (based on Maryland law); *People v. Irizarry,* 165 A.D.2d 715, 560 N.Y.S.2d 279, 280 (1990) (extending *Batson* to gender).

Even if it can be validly argued that the rule of *Batson,* which forbids the exercise of racially motivated peremptory challenges, extends to gender, appellant did not preserve error by timely objecting or bringing himself within the "novel constitutional theory" exception. *Cf. De Gross,* 960 F.2d at 1438. Appellant's third point of error is overruled.

In his fourth point of error, appellant contends that the "trial court erred by including within the court's charge a limiting instruction for the jury to disregard evidence of prior inconsistent statements made by Maria P. Hernandez."

■■■■ Hernandez was called as a defense witness. It was established that she lived next door to appellant and near the home of the complaining witness. Hernandez had heard of the burglary of the Gross home. The record of direct examination then reflects:

> Q: Did you see anything that day regarding the burglary?
>
> A: No.

At this point, appellant's counsel attempted to lay the predicate for impeaching his own witness. There was no objection to his effort.[4] After Hernandez denied any knowledge of the instant burglary, appellant's counsel established that Hernandez had talked with him personally about 4:30 p.m. the day before at appellant's house. Counsel then questioned the witness about prior inconsistent statements made personally to

---

4. The voucher rule in Texas with its common law roots is gone with the wind. *Russeau v. State,* 785 S.W.2d 387, 390 (Tex.1990). "The credibility of a witness may be attacked by any party, including the party calling him." TEX.R.CRIM. EVID. 607. A party is not prohibited from impeaching his own witness. *Zule v. State,* 802 S.W.2d 28, 34 (Tex.App.—Corpus Christi 1990, pet. ref'd). The right to impeach one's own witness, however, is subject to the trial court's

authority under Rules 403 and 610 of the Texas Rules of Criminal Evidence to protect against abuse. *Miranda v. State,* 813 S.W.2d 724, 734 (Tex.App.—San Antonio 1991, pet. ref'd). "Surprise" and "injury to the cause" are no longer per se factors before a calling party can impeach its own witness, and the opposing party will have to resort to Rule 403 as its ground for objection. *Id.*

him by the witness that she had seen "Paun," a Mexican man, exit the Gross house on the day in question carrying a television set and a cassette/radio and that she had seen "Paun" place the items across the fence behind appellant's house. Hernandez consistently denied making those statements to counsel and pointed out to him that "Sharon"[5] had made some of those statements to him. After the interrogation, counsel did not call any witness or offer evidence to complete the impeachment of Hernandez.

The trial court's charge included the following instruction:

> You are instructed that a witness may be impeached by showing that he or she has made other and different statements out of court from those made before you on the trial. Such impeachment evidence may be considered by you to aid you in determining (if it does so) the weight, if any, to be given the testimony of the witness at trial and his or her credibility; but such impeaching evidence, if any, is not to be considered as tending to establish the alleged guilt of the defendant in such case.

> Therefore, you are further instructed that prior inconsistent statements allegedly made by Maria P. Hernandez out of court were admitted only for the purpose of impeaching the said witness Maria P. Hernandez, if you find it does impeach her, and you cannot consider said impeachment testimony as any evidence whatever of the guilt or innocence of the defendant.

Appellant's counsel objected to the jury instruction on the basis that it informed the jury "that any impeachment evidence on Maria Hernandez can be regarded only as impeachment" and "that there is value to that impeachment other than solely as impeachment." The thrust of appellant's objection was that his interrogation of Hernandez could be used as substantive evidence on the issue of guilt or innocence. The State argued that the limiting instruction was proper. Otherwise the jury would take what the defense counsel was "asking in terms of questions as the truth" and "substitute it for sworn testimony." The trial court overruled the objection to the limiting instruction.

On appeal, in his stated fourth point of error, appellant complains of the limiting instruction because it charged the jury to disregard evidence of Hernandez's prior inconsistent statements. An error presented on appeal must comport with the objection made at trial or nothing is presented for review. *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991); *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Hinkle v. State*, 442 S.W.2d 728, 732 (Tex.Crim. App.1969). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Appellant's objection at trial and complaint on appeal appear to be different. Moreover, the instruction given did not tell the jury to totally disregard the prior statements, if any, of Hernandez but limited their use to the issue of Hernandez's credibility as a witness.

Appellant does present argument on appeal that the testimony of Hernandez was admitted for both impeachment purposes and direct evidence and that the prior inconsistent statements of Hernandez "directly related to who may have been responsible for the burglary." If it may be argued that the complaint at trial and on appeal are the same, we have several observations.

"To impeach a witness means adducing proof that such witness is unworthy of belief or credit." *Brown v. State*, 475 S.W.2d 938, 952 (Tex.Crim.App.1971), *overruled on other grounds, Bradford v. State*, 608 S.W.2d 918 (Tex.Crim.App.1980). Thus, impeachment is aimed at attacking the credibility of a witness. *See* Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, Guide To The Texas Rules of Evidence: Civil and Criminal § 607.1 at 397 (1988). Testimony admitted only for impeachment purposes is without probative value and cannot be considered as substantive evidence. *Key v. State*, 492 S.W.2d 514, 516 (Tex.Crim. App.1973). One of the common methods of

---

**5.** "Sharon" was shown by the record to be appellant's sister. She was not a witness.

impeachment is by the use of prior inconsistent statements, oral or written, under oath or not. *Miranda*, 813 S.W.2d at 735. The jury may consider the inconsistency as damaging to the witness's credibility, but may not use the evidence substantively. *Jernigan v. State*, 589 S.W.2d 681, 692 (Tex.Crim. App. [Panel Op.] 1979); *Smith v. State*, 520 S.W.2d 383, 386 (Tex.Crim.App.1975). Rule 607, permitting a party to impeach its own witness, does not permit a party to call a witness primarily for the purpose of impeaching the proposed witness, with evidence that would be otherwise inadmissible. *Zule v. State*, 802 S.W.2d 28, 34 (Tex.App.—Corpus Christi 1990, pet. ref'd). "When counsel knows that a witness has nothing favorable to say, counsel should not be permitted to parade inconsistent statements before the jury in the hope that they will be treated as substantive evidence." HULEN WENDORF, DAVID SCHLUETER & ROBERT R. BARTON, TEXAS RULES OF EVIDENCE MANUAL, Crim. 607 at VI–37 (3d ed. 1991).

▐ As earlier noted, there was no objection to counsel's interrogation of Hernandez, no Rule 403 hearing, and no voir dire examination or cross-examination which demonstrated the *circumstances under which the* witness was called. Normally, when testimony is offered and admitted for impeachment purposes only, it should be limited in the court's charge. *See Thurman v. State*, 382 S.W.2d 492, 493 (Tex.Crim.App.1964). Where a *limiting* charge is *not given* and the testimony could have only been used by the jury for impeachment purposes, no error is presented. *Jones v. State*, 810 S.W.2d 824, 828 (Tex.App.—Houston [14th Dist.] 1991, no pet.). And when the testimony could have been *admitted for both impeachment* purposes and as direct evidence, no limiting instruction is required. *Cantrell v. State*, 731 S.W.2d 84, 95 (Tex.Crim.App.1987).

Appellant argues that his interrogation of Hernandez after she denied that she knew anything about the alleged burglary could be used both for impeachment purposes and as substantive evidence on the issue of guilt or innocence and that the limiting instruction was improper. He does not demonstrate how such testimony could have been used as substantive evidence and has not briefed the issue. *See* TEX.R.APP.P. 74(f).

Appellant does not take the position that the limiting instruction should not have been given because the impeachment was not completed. We conclude, under the circumstances, there was impeachment and that the charge was proper. *Cf. Henley v. State*, 387 S.W.2d 877, 882 (Tex.Crim.App.1965), *overruled on other grounds, Ex parte Wilson*, 588 S.W.2d 905 (Tex.Crim.App.1979) (when the prosecutor reads from a written statement *in a manner* reflecting that the witness did make the statements concerning which he is being interrogated even though the witness denies making such statements, the trial court should give the limiting charge). Appellant's fourth point of error is overruled.

▐ Lastly, appellant contends that the "trial court erred by commenting on the weight of the evidence in the jury charge by instructing the jury to disregard evidence of prior inconsistent statements by Maria P. Hernandez." The point of error refers to the limiting instruction previously discussed. Here again, the instruction was a limiting one, not an instruction for the jury to disregard the evidence. In this regard, appellant's complaint on appeal does not comport with the objection at trial and presents nothing for review. *Turner*, 805 S.W.2d at 431.

▐ Appellant did object to the limiting instruction as follows: "I further state that it would be error for the court to instruct specifically on the one witness, Maria Hernandez." The objection was overruled. The necessity of a limiting instruction pertained only to Hernandez.

▐ It is, of course, not proper for a court's charge to single out certain testimony as this would constitute an improper comment on the weight of the evidence. TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1993); *Hawkins v. State*, 656 S.W.2d 70, 73 (Tex.Crim.App.1983). Limiting instructions, however, are proper in different contexts and are often highly desirable. A limiting charge by its very nature must be directed to certain testimony to prevent the jury's misuse of such testimony. An abstract limiting charge would be useless and confus-

ing to the jury. We have held that the trial court acted properly in limiting the use of the prior inconsistent statements of Hernandez, and we find no merit in appellant's instant contention.[6] Appellant's fifth point of error is overruled.

The judgment is affirmed.

---

**6.** In approving the trial court's action, we do not place the Good Housekeeping seal of approval on the form of the limiting instruction. It was suffi-

cient, however, considering appellant's objections and given the circumstances.