IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-378-CR





ALLEN ANDRE CAUSEY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 0915672, HONORABLE BOB PERKINS, JUDGE PRESIDING



 




 A jury found appellant guilty of murder, and assessed his punishment at
imprisonment for fifty years. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.02, 1973 Tex.
Gen. Laws 883, 913, amended by Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1,
1973 Tex. Gen. Laws 1122, 1123 (Tex. Penal Code Ann. § 19.02, since amended). We will
affirm the judgment.

 The sufficiency of the evidence is not challenged, but a statement of some of the
facts will aid in understanding the disposition of appellant's ten points of error. The body of the
murder victim was found on or near a parking lot at an apartment complex. While officers were
investigating at the scene of the murder, a car was driven past the scene several times and the
driver created suspicion in the minds of some of the observers who were at the complex. This
information received and acted upon by investigating officers led to the appellant. Officers
Michael Huckabay and Bruce Boardman asked the appellant to accompany them to the police
station. He did so and while there made a written confession which officer Ruben Fuentes
reduced to writing and typed. Officer Hector Polanco was the supervising officer. 

 Appellant's written statement, which was admitted in evidence, describes the
murder.



My name is Allen Andre Causey. I am 26 years old. I was born on March 26,
1965. I live at 6700 Hilcroft, Austin, Texas. My home phone number is 928-3337. I work for Charlie Hill doing landscape. His phone number is 926-6331.


Right now, I am at the Austin Police Dept. giving this statement regarding the
death of a Mexican girl on Sunday, August 11, 1991, in the early morning hours
at the Springcreek Apts on Springdale Road, Austin, Travis County, Texas.


Saturday, August 10, 1991, I spent all day with Bobby Harrell. I have known him
for about 7 years now. His sister is my girlfriend. Bobby had been with me over
at my mother's house until about 10:30 p.m. We then went over to Springcreek
Apts. on Springdale and sat over at Mike Kelley's apt. We were there until after
midnight. We went over to Lillie's apt. There at Springcreek Apts. about 1:00
or 1:30 a.m. This was Sunday, August 11, 1991, by now. At one point, Bobby
Harrell left first to go get some cocaine somewhere in the apt. complex. He came
back and then a little while later I went down to the Circle K store and got some
more cocaine. I came back to Lillie's apt. Bobby was still there.


He left again in a little while and it was about 5:30 a.m. and he was gone for a
long time. I was wondering what was taking him so long so I went to look for
him. When I got outside I saw Bobby Harrell out in the parking lot talking to
some Mexican chick. Bobby told me that he had gotten into a fight with some
black dude and I saw the black dude running off. At this time, the Mexican chick
took off running and Bobby Harrell told me that she had beat him for some
cocaine. This means that they were talking about some agreement and she did not
want to come through with it. Bobby was trying to get some sex from her for
drugs. When the Mexican chick took off running, I ran after her. 


I caught up to the Mexican chick and I grabbed her by the right arm and jerked her
and she fell to the ground. I held her down and started choking her and Bobby
came up and started hitting her with his belt buckle. His belt buckle was made of
metal and was large and kind of round with the straight little rod in the middle of
it. I hit her a few times with my hand on her face. Bobby started kicking her. 
Bobby Harrell then picked up this large cement brick that was laying nearby and
hit the Mexican chick with it several times. I'm not sure how many times he hit
her with it, but I know for sure that he hit her in the front of the head and the back
of the head.


We left her laying there and went to the parking lot where the Mexican chick had
parked her car. Bobby Harrell got in the Mexican chick's car which was a brown
colored small car like a Toyota. I think it was a 2Dr. The keys were in the car
and Bobby drove it to 1157 Salina and I followed him in Bobby's wife's Olds
Cutlass. When we got to the Marshall Apts where we left the Mexican chick's car,
Bobby got out and wiped her car down with a rag and then got in the Cutlass with
me and we went back to Lillie's apt. On the way back to Lillie's apt., Bobby
Harrell through [sic] the rag he had used to wipe the Mexican chick's car with, out
the window as we went down Airport Blvd.


This is the end of my statement. I can read and write the English language and I
have read this statement and it is true and correct to the best of my knowledge and
belief. I have given this statement on my own free will without the coercion or
threats being made against me.



Medical Examiner Dr. Robert Bayardo's testimony concerning the victim's cause of death was
consistent with appellant's confession.

 In his first three points of error, appellant asserts that the trial court erred in failing
to require the State to produce, either for appellant or for the trial court's in camera inspection,
evidence in the possession of the State which constituted or would lead to impeachment and
exculpatory material regarding officers Hector Polanco, Michael Huckabay, and Ruben Fuentes. 
In support of these points of error, the appellant urges matters which are not of record in this case
and matters not of record contained in an appendix to his brief. We may not consider matters
which are not of record. Beck v. State, 573 S.W.2d 786 (Tex. Crim. App. 1978), and those
matters attached to the brief. Thompson v. State, 612 S.W.2d 925 (Tex. Crim. App. 1981).

 On December 18, 1991, at a pretrial hearing on his motion to suppress the
confession, appellant testified that the signature appearing in three places on the confession was
his signature. However, he denied that he told the officers the matters related in the confession
that were inculpatory, and testified that the inculpatory parts of the confession were not true. 
Appellant testified that, although he completed the eleventh grade in school, he could not read and
that the officers obtained his signature on the confession by telling him that his signature on the
papers would acknowledge that the officers had read to him his legal rights and that they had not
beaten him. Since the officers had not beaten him and had read to him his legal rights, he signed
the document at their request before witnesses who signed the confession. Appellant insisted that
the confession was a fabrication written by the officers which was consistent with information they
received from other sources. On the trial of the case, appellant during cross-examination read
portions of the confession to the jury.

 Appellant filed a motion including a general request that the State furnish him or
the trial court in camera all exculpatory evidence and statements and other evidence which would
tend to impeach the State's witnesses. A pretrial hearing was had on May 29, 1992, on the
motion. No evidence was offered, but the appellant, among other matters, argued that he should
be furnished police records of unrelated cases in which officers Polanco, Huckabay, Fuentes, and
Boardman had been involved, as well as police personnel records of these officers. Appellant
urged that these materials should be furnished him because be believed they would aid him in
cross-examination and impeachment of these officers who obtained the appellant's confession. 
Appellant's argument to support his request for these materials was based on courthouse rumors
and newspaper articles that the police department and the grand jury were investigating police
officers who had allegedly obtained false confessions and committed perjury in unrelated cases. 
Appellant argued that the officers who worked his case and obtained his confession were among
those being investigated. Appellant argued globally: "I want all of the impeachment material
available in any state or state agency file regarding the methods, complaints, improprieties by
which any of these officers have been involved in getting a confession. . . . Short of that, I would
like every complaint having to do with the taking of confessions by all of these officers." 
Appellant did not know where these complaints would be, but "assume[d] a number of them
[were] in custody of the Grand Jury office of the district attorney. There may well be others in
internal affairs. I don't know where they keep these things in the police department, but I assume
they're all in the City of Austin and the district attorney can find them." There were lengthy
discussions, argument, and hypothetical circumstances considered as to how the materials
appellant was seeking could be used at trial. The May 29th hearing concluded with the trial court
stating that if furnished persuasive authority, he might grant appellant's motion in the future. 
"For the time being, I am denying it, but I am stating to you specifically that my denial as ordered
today is not a final order; that I expect for you to bring me cases that you have on Thursday and
I will be glad to look at it at that time and make a final ruling . . ."

 On June 6, 1992, appellant filed an amended pre-trial brief supporting his motions
seeking discovery of exculpatory and impeaching evidence which the State possessed, and another
hearing was had on June 30, 1992. At that hearing, the trial court ordered the State to produce
for his in camera inspection any records of confessions that Huckabay, Fuentes, Boardman, or
Polanco had obtained where there was a claim that the confessions were totally fabricated or that
the officers had supplied inculpatory parts of the confessions. Appellant did not object to the trial
court's order nor did he complain that the State did not comply with the order. Since appellant
did not obtain an adverse ruling he has failed to preserve for review the matter about which he
complains on appeal. Ramirez v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991); McKay
v. State, 707 S.W.2d 23, 35-36 (Tex. Crim. App. 1985); Wallace v. State, 618 S.W.2d 67 (Tex.
Crim. App. 1981). Appellant's first three points of error are overruled.

 In points of error seven and eight, appellant contends that the trial court erred in
not allowing the cross-examination of Hector Polanco concerning his testimony that he had never
known anyone to have been involved in a coerced confession and that he had never testified
untruthfully. In these points of error, appellant asserts that the alleged errors of the trial court
occurred during Polanco's cross-examination. The State in its brief without explanation seems
to assume and argues as if these alleged errors occurred during Polanco's cross-examination. 
Indeed the statement of facts improperly designates as cross-examination the portions of Polanco's
testimony where the alleged errors occurred. This is curious since the State did not call Polanco
as a witness. It was the appellant that called Polanco as a defense witness, and these alleged
errors occurred during Polanco's testimony on direct examination by defense counsel. Polanco
testified during direct-examination by defense counsel that: "I've never seen a coerced
confession," and referring to trial testimony, "I always have told the truth." Defense counsel then
argued that he should be allowed to impeach Polanco with specific instances from unrelated cases.

 The credibility of witness may be attacked by any party, including the party calling
him. Tex. R. Crim. Evid. 607. This rule has been recently interpreted in Adams v. State, 862
S.W.2d 139 (Tex. App.--San Antonio 1993, pet. ref'd).



Rule 607, permitting a party to impeach its own witness, does not permit a party
to call a witness primarily for the purpose of impeaching the proposed witness,
with evidence that would be otherwise inadmissible. Zule v. State, 802 S.W.2d
28, 34 (Tex. App.--Corpus Christi 1990, pet. ref'd). "When counsel knows that
a witness has nothing favorable to say, counsel should not be permitted to parade
inconsistent statements before the jury in the hope that they will be treated as
substantive evidence." Hulen Wendorf, David Schlueter & Robert R. Barton,
Texas Rules of Evidence Manual, Crim. 607 at VI-37 (3d. ed. 1991).



Id. at 148. The appellant here was attempting to get before the jury otherwise inadmissible
evidence by impeaching Polanco whom he had called as a witness primarily for that purpose. 
Points of error seven and eight are overruled.

 Appellant, in point of error four, asserts that the trial court erred in not allowing
the cross-examination of Hector Polanco regarding his vulnerability to losing his job and to
criminal prosecutions. In points of error five and six, which appellant consolidates for argument
with point of error four, he urges that the trial court erred in not allowing him to cross-examine
Huckabay and Fuentes regarding their concern for Hector Polanco's vulnerability to losing his job
and to criminal prosecution. Appellant does not claim that Polanco and the other officers were
biased against him. Rather he argues that Polanco knew his job was in jeopardy and that the
grand jury was after him for misbehavior in securing confessions and his consequent testimony. 
Further he argues, were Polanco to admit having "cooked up" appellant's confession he would
have been foolish to hope he could remain, employed and unindicted for long. Appellant argues
Huckabay and Fuentes, while not being in jeopardy themselves, would "stick with their buddy in
blue." 

 In further support of these points of error, appellant quotes his trial-court argument:



 I think the points that I'm getting at were sufficiently clear in asking these
questions. I believe they all go to the motives of the officers involved in testifying,
their reasons for testifying as they do. . . . I have the right, under the Texas and
federal Constitution, Sixth Amendment, Fifth and Fourteenth Amendments, Article
1, section 10, Article 1 section 13, the open court provision, Article 1 section 19,
the relevant parts of the Code of Criminal Procedure. For effective cross
examination I have to be able to look into the motives, to explore the motives of
officers and other witnesses to testify as they do. And that's why I would pursue
this line of inquiry with this officer and with future officers.


 What I'm attempting to show is that, for example, an officer who has been
arrested, it goes in [his] file, it follows him. An officer who has been investigated,
an officer who's presently under investigation, an officer who's the subject of [a]
Grand Jury inquiry, an[] officer who's the subject of public complaints, all of these
go in their files. All of these affect the way they perform their job or may affect
the way they perform their job. It may affect other officers who work with them. 
It may affect whether the officers cover for each other, if one of them has made a
mistake of some kind. All of that sort of thing. 



 Polanco was the supervising officer, and he assigned Huckabay to take charge of
the investigation of this murder because Huckabay was an officer with sixteen years experience. 
Polanco also went to the scene of the murder and he was present part of the time when Huckabay
was interrogating appellant. Both Huckabay and Polanco testified that Polanco was never alone
with appellant while appellant was being interrogated. Appellant testified at the hearing of his
pretrial motion to suppress the confession, but he did not testify that Polanco did anything
improper to obtain his confession. At the pretrial hearing, appellant contended he was tricked into
signing the confession because Huckabay and Fuentes had assured him he was merely
acknowledging that he had been read his legal rights and that he had not been beaten. However,
at the trial, after Polanco testified, appellant testified that Polanco was alone with him in the
interrogation room for at least an hour. Appellant testified he was induced to make the confession
because Polanco choked him, threatened him with a lethal injection, and promised to have him
"turned out." Appellant understood Polanco's promise to have him "turned out" to mean that
Polanco could have appellant sexually assaulted by other inmates while he was incarcerated. 
Although officer Fuentes did not otherwise participate in the investigation of the murder, he typed
appellant's confession. Fuentes was asked to type the confession because he typed with greater
speed and was more accomplished at using the word processor than some of the other officers. 

 As we noted in our discussion of points of error seven and eight, Polanco was a
defense witness. The appellant was attempting to impeach his own witness. A party may not call
a witness primarily for the purpose of impeaching the witness with evidence that would not
otherwise be admissible. Adams v. State, 862 S.W.2d 139 (Tex. App.--San Antonio 1993, pet.
ref'd); Zule v. State, 802 S.W.2d 28 (Tex. App.--Corpus Christi 1990, pet ref'd); Pruitt v. State,
770 S.W.2d 909 (Tex. App.--Fort Worth 1989, pet. ref'd). Moreover, a witness's credibility may
not be attacked on cross-examination by proof of specific instances of conduct which have not
resulted in conviction. Tex. R. Crim. Evid. 608(b). Appellant was attempting to discredit
Polanco's testimony with alleged acts of misconduct in unrelated cases. Appellant makes no claim
that Polanco's alleged acts of misconduct resulted in conviction. Appellant's point of error four
is overruled.

 In considering appellant's points of error five and six we will assume but not decide
whether he properly preserved for review the error he claims. In the portions of the record
designated by appellant in the supplement to his brief we can find no place where he attempted
to interrogate Huckabay or Fuentes about their own individual concern for Polanco's vulnerability
to loss of his job or criminal prosecution. Appellant was attempting to ask Huckabay and Fuentes
about specific acts of alleged misconduct by Polanco in unrelated cases, and whether such conduct
would place his job in jeopardy. Both Huckabay and Fuentes testified that they had no first-hand
knowledge about whether Polanco had ever fabricated or obtained false confessions or given
untrue testimony. Huckabay admitted he had heard rumors about such matters. They had no
first-hand knowledge that Polanco's job was in jeopardy or that he might be charged with criminal
offenses. Appellant's attempt to place before the jury evidence of Polanco's alleged specific acts
of conduct in unrelated cases was properly overruled by the trial court. Rule 608(b). See Ramirez
v. State, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990) (discussion of Rule 608(b)); Ramirez, 830
S.W.2d 827 (Tex. App.--Corpus Christi 1992, no pet.). Points of error five and six are overruled.

 In points of error nine and ten, appellant argues that the trial court erred in denying
his requested jury instructions on assault with bodily injury and on reckless conduct as lesser
included offenses. Appellant cites and quotes Saunders v. State, 840 S.W.2d 390, 392 (Tex.
Crim. App. 1992), but appellant omits within his quotation that part of the rule which we believe
controls our decision on these points of error. "If, however, the defendant simply denies
commission of the offense . . . the charge on the lesser offense would not be required." Id. at
392. This part of the Saunders rule is supported by the cases cited. McKinney v. State, 627
S.W.2d 731 (Tex. Crim. App. 1982); McCardell v. State, 557 S.W.2d 289 (Tex. Crim. App.
1977). Appellant testified that his confession was untrue and that it was fabricated by the officers. 
In addition, he testified before the jury that neither he nor Bobby Harrell, the other party alleged
to have participated in the murder, had ever seen the victim much less attacked her. Points of
error nine and ten are overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Affirmed

Filed: September 14, 1994

Do Not Publish


















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).