Opinion issued May 12, 2005








 





 

In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00053-CV
  __________
 
DUPONT EMPLOYEES RECREATION ASSOCIATION, Appellant
 
V.
 
A.V.A. SERVICES, INC., Appellee
 

 
 
On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 95-C0465
 

 
 
MEMORANDUM OPINION
           In this conversion and breach of contract case, a jury found that Dupont
Employees Recreation Association (“Dupont”) breached its contract with A.V.A.
Services, Inc. (AVA) and awarded AVA $106,725 in addition to pre-judgment
interest and attorney’s fees. In five points of error, Dupont contends that (1) the
evidence was legally and factually insufficient to support the jury’s finding for breach
of contract, damages, and market valuation; (2) the trial court erred in allowing
AVA’s “expert” to testify; and (3) there was a fatal conflict in the jury’s answers thus
requiring a new trial. We affirm. 
Background
          On December 1, 1990, Dupont and AVA entered into a vending services
agreement, in which AVA agreed to provide vending machines, primarily cold drink
machines, to Dupont’s plant in Orange, Texas. The agreement provided that AVA
would pay commissions to Dupont on a monthly basis payable on the 20th of the
following month. In addition, AVA agreed to pay a $5000 bonus. The agreement
was for three years and was automatically renewed for two additional years unless
written notice of non-renewal was given. The agreement was terminable without
cause upon 90 days’ notice and terminable for just cause following 30 days’ notice.
          In January 1992, AVA and Dupont entered into a two-year commission
agreement running from January 1992 through January 1994. The automatically
renewable agreement designated a 12 percent commission for the 68-can drink
machines and a three percent commission, if sales exceeded $400 each, for the eight
snack machines. The agreement also declared that
Upon termination of this agreement by lapse of time or otherwise, AVA
or its assigns shall have the right to immediately remove the equipment
installed. It is understood that the equipment remains the property of
AVA or its assigns and the title to the equipment is and shall remain in
AVA or its assigns at all time.

In January 1993, AVA and Dupont entered into another two-year, automatically
renewable, commission agreement. The configuration of the machines in the
subsequent agreement is different: there were only 65 drink machines and, in
addition to the eight snack machines previously identified, the new commission
agreement added another snack machine that would generate seven percent
commission regardless of the machine’s monthly sales. The commission agreement
indicated that Dupont requested “monthly comm. check.” 
          In September 1994, Dupont notified AVA that the vending services agreement
would expire at the end of the annual service period, and its board of directors sought
competitive bids, including one from AVA, for vending services at its facility. 
Dupont invited AVA to enter into the bidding process. AVA submitted its bid, but
on December 22, 1994, Dupont advised AVA that another company was awarded the
contract. The letter further stated as follows:
Accordingly, it will be necessary for you to remove your property from
the DuPont premises as soon after the contract expiration date as
possible.
 
Prior to reclaiming your equipment, we would very much appreciate you
bringing your financial obligations to [Dupont] current. Our records
indicate you owe us commissions for October, November and December
of 1994, as well as the annual $5,000 bonus. 

One month later, Dupont sent AVA another letter indicating that the service
agreement was to expire on January 29, 1995, and, because AVA had neglected to
pay the $5000 bonus and several commission checks, Dupont was claiming “a
security interest in the equipment” AVA had on the Dupont site. Dupont informed
AVA that it would not be permitted to “remove such equipment without a complete
remittance” of Dupont’s funds.


 AVA attempted to retrieve its machines, but was
denied access to the Dupont premises.
          On February 14, 1995, AVA filed suit against Dupont, in which it alleged that
Dupont breached the commission agreement by “permitting other persons or entities
to sell cold drinks on its premises in competition with [AVA],” and AVA sought
$32,500 for this breach. AVA also contended that it had overpaid commissions “in
the amount of at least $10,000.00” and contended that it was “entitled to recover such
overpayment” from Dupont. AVA further asserted that Dupont’s refusal to release
AVA’s vending machines was “a clear and material breach of the agreement, and
[AVA was] entitled to recover the direct and consequential damages it suffered as a
result of such breach.” “In the alternative,” AVA alleged that Dupont “converted
such equipment along with the contents of each machines.”(sic) AVA sought “to
recover the fair market value of the equipment and inventory contents of the
equipment at the time and place of conversion . . . January 30, 1995 in Orange
County.” AVA also sought exemplary damages for the conversion in excess of
$200,000. In its third amended petition, AVA abandoned the liquidated damages
claim resulting from the alleged sale of competitor’s products, but continued to
pursue the breach of contract, conversion, and overpayment of commissions claims. 
         The jury found no conversion, but did find that Dupont breached its agreement
with AVA. The jury determined that the fair market value for the equipment and
inventory was $106,725, and it also assessed attorney’s fees. The trial court denied
Dupont’s motion for judgment notwithstanding the verdict, and Dupont’s motion for
new trial was overruled by operation of law.
Sufficiency of the Evidence
          In points of error one and two, Dupont contends that there is legally and
factually insufficient evidence to support the findings of (1) breach of contract and
(2) damages resulting therefrom. 
 
Standard of Review 
          When reviewing a legal sufficiency question, we consider only the evidence
and inferences that tend to support a finding, and we disregard all evidence and
inferences to the contrary. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84
(Tex. 1992). If there is more than a scintilla of evidence to support the finding, the
no-evidence challenge fails. Id. More than a scintilla of evidence exists when the
evidence, as a whole, supporting the finding “rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.” Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).
          When reviewing a factual sufficiency question, we consider and weigh all of
the evidence and may set aside the verdict only if the finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The jury may believe one witness and
disbelieve another, and it may resolve inconsistencies in any testimony. Eberle v.
Adams, 73 S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).
Breach of Contract
          In point of error one, Dupont contends that there is legally and factually
insufficient evidence to support the finding of breach of contract.
          After having found that the parties entered into agreements on December 1,
1990; January 1, 1992; and January 29, 1993, the jury affirmatively answered the
question “Did [Dupont] fail to comply with any of its agreements with [AVA]?” 
Dupont contends that it is “undisputed” that (1) AVA demanded access to or the
return of its machines; (2) Dupont offered AVA access to or the return of its machines
conditioned upon presentation of title documentation and or satisfaction and
resolution of Dupont’s claims; and (3) after 10 days from demand, AVA simply “gave
the machines up” and, pursuant to its conversion claim, contended that the machines
belonged to Dupont. 
          Based on these undisputed facts, Dupont asserts that there are two reasons why
the evidence was legally and factually insufficient. First, AVA did not attempt to
remove the machines until after the contract expired; therefore, it could not breach a
contract that was no longer in effect. Second, “with all the uncertainty as to
ownership of the machines and the status of the account between the parties, Dupont
could not have been in breach by its actions. We disagree with both propositions.
          The commission agreement stated that 
 Upon termination of this agreement by lapse of time or otherwise, AVA
or its assigns shall have the right to immediately remove the equipment
installed. It is understood that the equipment remains the property of
AVA or its assigns and the title to the equipment is and shall remain in
AVA or its assigns at all time.

The contract clearly stated that AVA had the right to remove its machines when the
agreement terminated. A contractual duty that first arises when the contract ends is
enforceable. 
          Secondly, the contract specifically stated that the equipment belonged to AVA
or its assigns and that title to the equipment remained in AVA or its assigns. Dupont
places some significance on that fact that the “AVA did not own the machines in
question.” This is irrelevant to the breach of contract question. Dupont also argues
that, because AVA owed it commissions and a bonus, Dupont could not have
breached the contract. This was not the question that was asked of the jury. The jury
was simply asked if Dupont failed to comply with any of its agreements with AVA. 
         Neither party argues that the contract was ambiguous. Bill Stautmeister
testified that, when the contract ended, Dorsett instructed him to go to the Dupont
facility and retrieve AVA’s machines. Stautmeister was denied entrance and was
unable to “remove the equipment installed” as it had contracted to do. 
          We hold that the evidence was legally and factually sufficient to support the
finding that Dupont breached its contract with AVA. Accordingly, we overrule point
of error one. 
Damages
          In point of error two, Dupont contends that there is legally and factually
insufficient evidence that AVA sustained damages resulting from Dupont’s alleged
breach of contract. The only damages question submitted to the jury asked as
follows: 
What was the fair market value, if any, of the equipment and inventory
on or about February 3, 1995?
 
“Fair market value” means the amount that would be paid in cash by a
willing buyer who desires but is not required to buy to a willing seller
who desires but is under no necessity to sell.
 
ANSWER: ($106,725)

Dupont concedes that it did not object to the submitted charge.


 Dupont also
concedes in its brief that “the jury was not asked to find the damages, if any, which
resulted from Dupont’s alleged breach of contract.” Despite these concessions,
Dupont argues, on appeal, that “AVA presented absolutely no evidence of any
damage it sustained by virtue of any alleged breach of contract.” This was simply not
a question that was asked of the jury. Further, the record does not indicate that
Dupont submitted a question on causation that was later refused by the trial court. 
See Tex. R. Civ. P. 276.



          We hold that Dupont has waived any error regarding the submission of the
damage issue. See Tex. R. Civ. P. 274; Tex. R. App. P. 33.1(a)(1); In re B.L.D., 113
S.W.3d 340, 349 (Tex. 2003). We overrule point of error two.
Market Value
          In point of error three, Dupont argues that the trial court abused its discretion
by failing to grant Dupont’s motion to strike or exclude expert testimony and in
allowing unqualified and unreliable opinion evidence of “value.” In point of error
four, Dupont contends that there is legally and factually insufficient evidence to
support the jury’s answer to the “market value” question.
Expert Testimony
          Dupont alleges that 
the testimony of Grant Dorsett, AVA’s founder, lacked foundation; that
Dorsett had no training or education to appraise the value of vending
machines; that values based upon experience are subjective; that Dorsett
included calculations on values of vending machines that were not
owned by AVA; that Dorsett could not produce evidence of the purchase
price of any machine in issues; and, the at [sic] effective time of his
damage estimate, he had not seen much of the equipment for some time.
 
We review the trial court’s decision to admit expert testimony for abuse of discretion. 
E.I. du Pont de Nemours & Co., Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). 
In a complaint regarding the reliability of expert testimony, a party must present it to
the trial court, or appellate review is waived. See Maritime Overseas Corp. v. Ellis,
971 S.W.2d 402, 409 (Tex. 1998). 
          Before trial, Dupont filed a motion to strike AVA’s expert and exclude damage
evidence. In its motion, Dupont contended that Dorsett’s testimony would be
unreliable under rule 702 and “totally lack[ed] any measurable foundation.” It argued
that “Mr. Dorsett is not a component [sic] expert under Texas law, and this patchwork
of self-interested guesses is not admissible evidence of any damage suffered by
A.V.A.” The trial court ruled that he would take the “motion under consideration,
and you remind me to do this. And when Mr. Dorsett comes to testify and gets into
matters covered by the motion let me know. I’ll recess the jury. I’ll hear the
testimony and rule at that time.” 
          While questioning Dorsett during trial, AVA’s attorney asked to approach the
bench. There was a discussion off the record, and the testimony continued. Dupont
did not object to any of Dorsett’s market-value testimony. 
          After the jury returned its verdict, there was a hearing on AVA’s motion for
entry of judgment. The trial court granted AVA’s motion, and Dupont, “out of an
abundance of caution,” asked the trial court to rule on several motions that had not
been ruled on. One such motion was Dupont’s “motion to disallow Mr. Dorsett as an
expert witness and to bar his testimony on damages.” The trial court responded that 
I think the record would reflect my ruling at the time because I did let
him testify. As I recall, I let him testify as to the thing that you objected
to. To me that ruling is there, even though you brought it up by a
separate motion. Well, for your purposes that’s denied.

There was no objection in the record during Dorsett’s testimony. The record reflects
what Dupont’s pretrial objections were to Dorsett’s testimony, but there were no
objections raised during the testimony. The record is silent as to what agreements
may have been entered into “off the record.” It is unclear from the record whether
AVA’s attorney’s request to “approach the bench” during Dorsett’s testimony was
even related to Dupont’s pretrial objection to the admissibility of Dorsett’s testimony.
          Accordingly, we hold that Dupont has failed to preserve its point of error
challenging the admissibility of Dorsett’s testimony. See id. We overrule point of
error three.
Sufficiency
          No objection is required, however, to preserve Dupont’s no-evidence challenge
to Dorsett’s conclusory expert testimony. See Coastal Transp. Co. v. Crown Cent.
Petroleum Corp., 136 S.W.3d 227, 233 (Tex. 2004) (holding that objection is
required if challenging underlying methodology, technique, or foundational data
supporting expert testimony, unless testimony is wholly speculative or conclusive). 
Opinion testimony that is conclusory or speculative is not relevant evidence, because
it does not tend to make the existence of a material fact “more probable or less
probable.” See Tex.R. Evid. 401; Coastal Transp. Co., Inc., 136 S.W.3d at 232. 
Even unobjected-to conclusory testimony cannot be “some evidence” to support a
judgment. See Coastal Transp. Co., Inc., 136 S.W.3d at 232. 
          On appeal, Dupont contends that, because he “could not testify with certainty
as to the real and original purchase price of the machines,” Dorsett’s testimony was
“entirely too conjectural, arbitrary and speculative.” 
          Dorsett testified that he has been in the vending industry for almost 25 years,
and, during that time, he has bought approximately 4500 vending machines. He
testified that he was familiar with the cost and value of canned drink and candy
machines in the Texas market,


 and he was familiar with the condition of the
machines that were at the Dupont facility on February 2, 2003. Dorsett explained that
he was familiar with the equipment in the Dupont facility because he had spoken with
representatives from Dupont on many occasions who requested updated machines. 
When asked if he had expertise and knowledge equal to anyone in the vending
business, Dorsett responded that he “probably bought more machines individually
than anybody in Texas.” He explained how he valued each machine


 and concluded
that the fair market value for the machines that Dupont refused to release was
$98,000, and he valued the unrecovered product inventory that was in those machines
at $8,525.25. AVA introduced two exhibits reflecting invoices for these amounts that
were sent to Dupont in March 1995.


 
          Dorsett gave his opinion on the description of the types of machines involved,
their respective purchase cost, the condition of the machines on an average basis, the
basis for his opinion, and their market value at the time that the agreements ended. 
Furthermore, Dorsett was subjected to cross-examination on his opinions. We hold
that the evidence was legally and factually sufficient to support the market value
award. We overrule point of error four.         
Fatal Conflict
          In point of error five, Dupont asserts that the jury’s finding that Dupont was in
lawful possession of the personal property by virtue of a qualified refusal fatally
conflicts with the jury’s finding that the same conduct constituted breach of contract.
          When determining whether jury findings irreconcilably conflict, we apply a de
novo standard of review. See Bender v. S. Pac. Transp. Co., 600 S.W.2d 257, 260
(Tex. 1980). In reviewing the jury findings for conflict, the threshold question is
whether the findings address the same material fact. Id. This Court may not strike
down jury answers on the ground of conflict if there is any reasonable basis upon
which they can be reconciled. Id. This Court must reconcile apparent conflicts in the
jury’s findings, if reasonably possible, in light of the pleadings and evidence, the
manner of submission, and the other findings considered as a whole. Id. This Court
does not determine whether the findings may reasonably be viewed as conflicting; 
to the contrary, the question is whether there is any reasonable basis upon which the
findings may be reconciled. Id. However, if “one of the answers would require a
judgment in favor of the plaintiff and the other would require a judgment in favor of
the defendant, then the answers are fatally in conflict.” Little Rock Furniture Mfg.
Co. v. Dunn, 222 S.W.2d 985, 991 (Tex. 1949). If we determine that a fatal conflict
exists, we must remand to the trial court for a new trial. See Cotton Belt R.R. v.
Hendricks, 768 S.W.2d 865, 870 (Tex. App.—Texarkana 1989, no writ) (citing Ins.
Co. of N. Am. v. Brown, 394 S.W.2d 787, 789 (Tex. 1965)).
          Dupont contends that, because the jury found no conversion, the jury could not
have properly found Dupont breached any contract with AVA. We disagree. 
Dupont’s argument cannot proceed past the threshold question—whether the findings
address the same material fact. 
          A review of the pleadings reveal that AVA pursued this case on two alternative
theories—conversion and breach of contract. AVA asserted that Dupont exercised
dominion and control over AVA’s vending machines and excluded AVA from
possession, thereby converting the property. Alternatively, AVA claimed that Dupont
breached its contract with AVA by refusing to return the vending machines when the
contract ended.
          In submitting the conversion issue and, despite AVA’s objection, Dupont’s
instruction on “qualified good-faith refusal” was given to the jury. The instruction
stated as follows:
You are further instructed that the law recognizes a qualified good-faith
refusal to surrender personal property, and conversion does not occur if:
 
(1) [Dupont] refused to deliver the property because of a justified
need to investigate the rights of the parties.
 
(2)[Dupont’s] refusal to deliver the property was made in good faith
to resolve a doubtful matter.
 
(3)[Dupont’s] reason for its qualified refusal was distinctly stated to
AVA in a timely manner. Any reasons for refusing to turn over
the property which are not mentioned at the time of refusal are
lost and may not be raised later.
           
As previously stated, the breach of contract question in the charge simply asked, “Did
[Dupont] fail to comply with any of its agreements with [AVA]?” There was no
“qualified good-faith refusal” instruction given to the jury on the breach of contract
question. As such, the “qualified good-faith refusal” raised different material facts
for the jury to consider regarding conversion than had to be considered for breach of
contract.
          We hold that, because the jury questions on conversion and breach of contract
addressed different material facts, there is no conflict in the answers. Accordingly,
we overrule point of error five. 
Conclusion
          We affirm the trial court’s judgment.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Keyes, Hanks, and Bland.