# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00473-CR

**Delfino Torres-Vasquez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT NO. D-1-DC-16-904032, THE HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Delfino Torres-Vasquez guilty of continuous sexual abuse of a young child for sexually abusing his stepdaughter, A.G., *see* Tex. Penal Code § 21.02(b), and assessed his punishment at confinement for 30 years in the Texas Department of Criminal Justice, *see id.* § 21.02(h). In a single point of error, appellant asserts that the trial court's exclusion of evidence denied him the right to present a complete defense. Finding no violation of appellant's constitutional rights, we affirm the trial court's judgment of conviction.

## BACKGROUND

The evidence at trial reflected that appellant met and married M.G., A.G.'s mother, when A.G. was a very young child—three or four years old. A.G.'s biological father was not involved in her life in any way, and she considered appellant her father. The jury also heard evidence that, from the age of three or four until A.G. was ten, appellant perpetrated various sexual

acts against his stepdaughter on numerous occasions, including: touching her on her "chest," both over her clothing and under her clothing; rubbing her "vagina" over her clothing; making her "vagina area" touch his genitals (over their clothing) when he made her straddle his lap and then "moved her on his genitals;" touching her "vagina" inside her clothing; "stick[ing] his fingers inside" her; forcing her to touch and "rub" his penis, both over his clothing and under his clothing; forcing her to masturbate him until he ejaculated; performing oral sex on her; forcing her to perform oral sex on him, and attempting "to put his penis inside of [her]."[1]

The record reflects that, prior to meeting appellant, M.G. dated a man named "Jaime," and that she occasionally left A.G. in his care when she went to work.[2] Multiple times throughout the course of trial, appellant sought to admit evidence of an alleged alternative perpetrator through evidence of a purported conversation between M.G. and appellant's sister, Maria Guadalupe Torres. During this conversation, which supposedly occurred at some point between 2003 and 2009, M.G. told Torres that A.G. told her about sexual abuse that Jaime allegedly perpetrated against A.G.

Appellant first sought to offer evidence about this conversation during cross-examination of M.G. when he asked about her relationship with Torres and conversations that she had with her sister-in-law when Torres visited from Mexico:

> Q. And you had confidence in [Torres]. I mean, these were personal conversations between the two of you that women have?

---

[1] Because the parties are familiar with the facts of the case and the evidence adduced at trial, we provide only a brief overview of the facts here and limit further recitation of facts in this opinion to those relevant to the point of error raised and those necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

[2] M.G. testified that she did not remember Jaime's last name.

2

A. Yes.

Q. And you confided in her, [M.G.], that when -- at a certain point this conversation came out that you told her that it wasn't always that easy, that you had some difficult times?

A. Yes.

Q. Okay. And that's why you were so protective of [A.G.]?

A. Yes.

Q. And one of the things that you shared with her from your heart was that you told her that your daughter had told you that she had to suck Jaime's penis?

A. I don't remember having said that to her.

Q. And you also told her that you would tell that little girl not to say that, that you don't say things like that. Do you remember that?

A. I don't remember that.

Q. And that part of the reason that you had a problem was that you didn't have anyone else to leave your child with at that time?

A. I didn't understand that question very well.

Q. Yeah. When you would go to work at your cleaning -- at the cleaners, you didn't have -- sometimes you didn't have someone to watch over her, so you relied on Jaime?

A. Yes.

Q. Okay. And one of the things that you told her about was that you were bothered that Jaime would bathe [A.G.] when she was around 3?

A. Yes.

Q. And that Jaime would bathe her --

3

At that point, the State objected. In the ensuing discussion at the bench, the State objected to evidence of an alternative perpetrator, arguing that it was not relevant. Because the indicted charges against appellant related to acts of sexual abuse alleged to have happened years after M.G.'s relationship with Jaime had ended, the trial court sustained the State's relevancy objection.

Appellant next sought to introduce the evidence, indirectly, when cross-examining the State's child-abuse expert about false memories:

Q.    Okay. Now, that event that just -- example I have given you, where someone walks in and assumes something, assumes they thought they saw something, you know, that becomes kind of the seed or the genesis, or it could be, of this false memory, isn't it?

A.    It can.

Q.    Okay. Now, let me add something else to the equation. What if, for example, a child has been abused previously, like at the age of 3, by somebody else?

The State objected, complaining that appellant was again improperly attempting to offer evidence of an alternate perpetrator.[3] During the ensuing discussion outside the presence of the jury, the trial court noted that, in her testimony, A.G. explicitly denied being sexually abused by anyone other than appellant. The court also indicated that "even if it happened when she was 3 and it did happen with

---

[3]    The State maintained that appellant's evidence of Jaime as an alleged alternative perpetrator failed to satisfy the standard for admissibility of alternative-perpetrator evidence. For alternative-perpetrator evidence to be admissible at trial, the evidence must be both relevant and connect the alleged alternative perpetrator to the charged offense. *See Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002) (requiring defendant to demonstrate that "his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator'").

another person, it's not relevant to [appellant's] particular indictment [that] starts in 2007." Appellant then explained that "[his] defense is this is a source confusion on this Complainant, that she is blending her memories from 2002 with, you know -- with this case here -- it was that guy." The trial court sustained the State's objection. Appellant objected to the court's ruling, complaining that it was "in violation of, what is it, 4th, 5th, 6th, 8th, and 14th Amendment to the Constitution, and also the same provisions in the Texas Constitution. It denies my right to a fair trial."

Next, during the defense case-in-chief, appellant recalled M.G. Outside the presence of the jury, appellant questioned her about the alleged conversation she had with Torres in which she purportedly told her about A.G.'s disclosure of Jaime's alleged sexual abuse:

Q. [M.G.], my other question is: Do you remember having a conversation with Guadalupe Torres where you discussed [A.G.] and when you were a single parent? Do you remember?

A. I don't remember.

Q. Do you remember any conversation with Guadalupe Torres -- and this would have been between 2003 and 2009 -- in which you told Guadalupe Torres that [A.G.] had told you that a man named -- your boyfriend at the time, a man name Jaime, had made her suck on his penis?

A. I don't recall.

The record indicated that appellant wanted to offer this testimony from M.G. in order to be able to offer Torres's testimony about the alleged conversation. Appellant then explained his reason for offering Torres's testimony: "it is our defense that this child has been abused and that she was abused by someone, this man named Jaime, sometime back in 2002, maybe earlier. And she's got memories of oral sex." Appellant maintained that the evidence about the alleged

5

conversation—where M.G. recounted her daughter telling her that Jaime made her suck on his penis—supported their "source attribution error" defense. In response, the State maintained that the evidence failed to meet the criteria for introducing evidence of an alternative perpetrator as it was mere speculation that another person had sexually abused A.G., particularly since A.G. had explicitly denied in her testimony that anyone else had sexually abused her. The trial court again sustained the State's objection. Appellant objected to the court's ruling as "a violation of [his] United States Constitution rights, the 5th, 6th, 8th, and the 14th Amendment to the Constitution and anything else that fits the Texas Constitution, as well." After appellant's proffer of M.G.'s testimony, and the trial court's ruling, appellant briefly questioned M.G. about topics not related to the alleged conversation. After M.G. testified, the court proceedings recessed for the weekend.

When the trial resumed on Monday, appellant again attempted to offer the evidence of an alleged alternative perpetrator when he sought to introduce Torres's testimony about her conversation with M.G. He elicited the following during the proffer of Torres's testimony:

Q. Did you have a conversation with [M.G.] where she told you that a man named Jaime had done something to her daughter?

A. Yes.

. . .

Q. Okay. So go ahead. So what -- where did the conversation go next?

A. And so she was working, and that she had to leave the little girl with the man that she was living with.

Q. Did she give a name of a man?

A. Well, I don't remember well. It could be Jaime, but I don't remember well.

6

Q. Okay. And did she tell you anything about that -- that she noticed that struck you bad or not well? Did she say anything about that that struck you and -- that struck you?

A. Like what the man was doing with the child?

Q. Yes.

. . . [exchange discussing M.G. telling Torres that the man was bathing A.G. when taking care of her while M.G. was at work]

Q. And so what did [M.G.] tell you that the child would tell her?

A. Well, this brings me shame, but I'll say it: that the man, he was bathing her, this man, and he was kissing her part, sucking her part, the man to the young girl.

On questioning by the prosecutor, Torres confirmed that she had no personal knowledge of the alleged sexual abuse.

At the end of the proffer of Torres's testimony, appellant argued that he was entitled to offer the evidence about the alleged conversation because "[the] defense is that there is some fabrication of allegations, but also that there is some source confusion going on" and he had a "5th Amendment, 6th Amendment, 8th Amendment, and 14th Amendment, the right to do this, that [he had] a right to present a defense under the U.S. Constitution." He further argued that the testimony should be allowed because "it attack[ed] the credibility of [M.G.]" because she stated that she did not recall telling Torres that Jaime "had committed any sexual abuse on her daughter."

At that point, the trial court noted the "hearsay nature" of the proffered testimony and asked appellant, "How is it that you are getting around that?" The court observed, "It's an out-of-court statement, it's clearly made not under oath -- and you are clearly trying to introduce it

7

to prove the truth of the matter asserted therein." The court specifically asked appellant what exception to the hearsay rule appellant was relying on for the admission of the out-of-court statements. In response, appellant indicated that "it's proper impeachment of the witness." After further discussion, the State also complained that the evidence was more prejudicial than probative. Ultimately, the trial court sustained the State's objection "on the basis of everything the State said and other things" and excluded Torres's testimony.

## DISCUSSION

In his sole point of error, appellant argues that the trial court's ruling excluding "evidence of a third party perpetrator as it relates to source attribution error in memory" denied him his constitutional right to present a complete defense.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). This standard applies even when the accused complains, as appellant does here, that the exclusion of evidence denied him his constitutional right to a meaningful opportunity to present a defense. *See Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing

8

court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297.

The evidence of a potential alternative perpetrator that appellant relied on was his sister's testimony about the alleged conversation that she had with M.G. in which M.G. purportedly told her that A.G. had ostensibly disclosed sexual abuse by Jaime. Appellant offered evidence about this conversation for the purpose of proving prior sexual abuse of A.G. by another perpetrator in support of his "source confusion" defense, which maintained that A.G. was confusing her memories concerning sexual abuse and mistakenly attributing the acts of abuse to appellant. The trial court observed that appellant's evidence was "an out-of-court statement" that appellant was "clearly trying to introduce it to prove the truth of the matter asserted therein."

Hearsay is a statement, other than one made by the declarant while testifying at a trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally inadmissible except as provided by the rules of evidence or statute. Tex. R. Evid. 802.

Here, the excluded evidence was about an out-of-court statement that M.G. made to Torres about an out-of-court statement that A.G. made to M.G. Therefore, it is a statement about a statement offered for the truth of the matter asserted, or hearsay-within-hearsay. This evidence was admissible only so long as each layer of hearsay independently satisfied some exception to the hearsay rule. *See* Tex. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against

9

hearsay if each part of the combined statements conforms with an exception to the rule."); *Sanchez v. State*, 354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011) ("When hearsay contains hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule."). Appellant sought to offer evidence about (1) M.G.'s statement to his sister and (2) A.G.'s statement to M.G. Thus, in order to be admissible, the evidence, including Torres's testimony, must be justified on two levels: there must be a hearsay exception that applies to A.G.'s statement to M.G. and a hearsay exception that applies to M.G.'s statement to Torres.

Possibly, A.G.'s statement to her mother describing alleged sexual abuse by Jaime was admissible as an outcry statement. *See* Tex. Code Crim. Proc. art. 38.072.[4] However, the record reflects that the appellant failed to satisfy the statutory requirements in order for A.G.'s hearsay statement to be admissible as an outcry statement through M.G. as an outcry witness.[5] *See id.* art. 38.072(b). Moreover, even assuming that the first level of hearsay (A.G.'s statement to M.G.) conforms with the outcry-statement exception, Torres's testimony was still inadmissible because the second level of hearsay (M.G.'s statement to Torres) does not conform to any hearsay exception.

---

[4] Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, governs the admissibility of certain hearsay evidence in specified crimes against a child younger than 14 years old or a person with disabilities. *See* Tex. Code Crim. Proc. art. 38.072. The statute allows testimony by the first adult in whom a child or disabled person confides regarding sexual or physical abuse. *See id.*; *Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005). The statement of the child or disabled person to the adult is commonly known as the "outcry," and the adult who testifies about the outcry is commonly known as the "outcry witness." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

[5] We note that appellant never questioned M.G. about the alleged statement that her daughter made to her disclosing Jaime's purported sexual abuse. Instead, he only asked M.G. about the statement that she made to his sister about A.G.'s outcry statement.

10

When the trial court sought an applicable hearsay exception from appellant, appellant indicated that the evidence was offered as "impeachment" of M.G. because she testified that she did not remember making the alleged statement (about A.G.'s statement to her) to appellant's sister. Assuming without deciding that Torres's testimony was an appropriate way to attack M.G.'s credibility due to her failure to recollect the conversation where she allegedly reported that A.G. had disclosed sexual abuse,[6] such evidence was not admissible as substantive evidence to support

---

[6] We observe that when the issue regarding the admissibility of evidence concerning M.G.'s alleged conversation with Torres first arose during cross-examination of M.G. in front of the jury, appellant's counsel asked M.G. if "one of the things that you shared with her (Torres) from your heart was that you told her that your daughter had told you that she had to suck Jaime's penis?" Likewise, in his proffer of M.G.'s testimony, he asked her if she

> remember[ed] any conversation with Guadalupe Torres -- and this would have been between 2003 and 2009 -- in which you told Guadalupe Torres that [A.G.] had told you that a man named -- your boyfriend at the time, a man name Jaime, had made her suck on his penis?

However, during the subsequent proffer of Torres's testimony, appellant's counsel elicited testimony that M.G. told Torres "the child" told her "that the man, he was bathing her, this man, and he was kissing her part, sucking her part, the man to the young girl."

Thus, M.G. was asked about a conversation concerning A.G.'s outcry about Jaime making her "suck his penis," which M.G. did not recall, but Torres's testimony about the conversation with M.G. reflected that the conversation concerned A.G.'s outcry about Jaime "kissing" and "sucking her part."

Appellant's counsel acknowledged the discrepancy in the acts of sexual abuse allegedly disclosed in his argument during the proffer of Torres's testimony:

> We have got the witness on the alternative perp stuff, but I asked the wrong question. I went through my notes. The email I got was from back in March. What my witness says is that the -- she said -- her words were *chupar*. But what she meant was *chupar* her vagina, in other words, lick her vagina, not suck his dick, which is what I asked the lady. So I asked her the wrong question. I suspect that the lady will say the same answer as, "I don't remember saying that," but to be fair, you know, it's not a proper

11

appellant's "source confusion" defensive theory in that it did not constitute substantive evidence of an alternative perpetrator.

Impeachment of a witness means adducing proof that such witness is unworthy of belief or credit. *Willingham v. State*, 897 S.W.2d 351, 358 (Tex. Crim. App. 1995); *Ransom v. State*, 789 S.W.2d 572, 587 (Tex. Crim. App. 1989); *Brown v. State*, 475 S.W.2d 938, 952 (Tex. Crim. App. 1971), *overruled on other grounds by Bradford v. State*, 608 S.W.2d 918 (Tex. Crim. App. 1980). Thus, impeachment is aimed at attacking the credibility of a witness. *See* Steven Goode, Olin Guy Wellborn III, & M. Michael Sharlot, 1 *Texas Practice Series: Guide to the Rules of Evidence* § 607.1 (4th ed.). Testimony admitted only for impeachment purposes is without probative value and cannot be considered as substantive evidence. *Key v. State*, 492 S.W.2d 514, 516 (Tex. Crim. App. 1973); *Cherb v. State*, 472 S.W.2d 273, 279 (Tex. Crim. App. 1971); *Thompson v. State*, No. 12-11-00118-CR, 2012 WL 1514776, at *3 (Tex. App.—Tyler Apr. 30, 2012, no pet.) (mem. op., not designated for publication); *Adams v. State*, 862 S.W.2d 139, 147 (Tex. App.—San Antonio 1993, pet. ref'd); *see Williams v. State*, 565 S.W.2d 63, 65 (Tex. Crim. App. 1978) (explaining that evidence admitted for limited purpose may not be used for another purpose); *Bocanegra v. State*, 519 S.W.3d 190, 234 (Tex. App.—Fort Worth 2017, no pet.) (recognizing that impeachment

impeachment [by] me because I asked the wrong, you know, part.

Although appellant's counsel assumed M.G.'s answer concerning a conversation in which she told Torres about A.G. telling her that Jaime kissed and licked her part would be the same as her answer concerning a conversation in which she told Torres about A.G. telling her that Jaime made her suck his penis, counsel did not recall M.G. in order to establish that M.G. did not remember telling Torres about that alleged outcry statement.

12

evidence, whose only aim is to attack credibility of witness but otherwise has no probative value, "is not substantive evidence sufficient to prove a material fact in a case").

As impeachment evidence, which cannot be used as primary evidence and would be limited to the purpose for which it was admitted (attacking M.G.'s credibility), Torres's testimony was not substantive evidence supporting appellant's "source confusion" defensive theory—that is, even if admissible to impeach M.G., it would not have been substantive evidence of an alternative perpetrator's sexual abuse of A.G. such that it would support appellant's theory that an alternative source for memories of sexual abuse existed, that A.G. was confusing her memories, and that she was mistakenly attributing the abuse to appellant.

The United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986); *see also* U.S. Const. amends. VI (compulsory process and confrontation of witnesses), XIV (due process). However, a criminal defendant's right to present relevant evidence is not absolute. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (recognizing that "[a] defendant's right to present relevant evidence is not unlimited"). Instead, it is subject to reasonable restrictions that accommodate other legitimate interests in the criminal-trial process. *Id.*; *Michigan v. Lucas*, 500 U.S. 145, 149 (1991); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973).

Here, appellant's proffered evidence was limited by the application of the hearsay rule, *see* Tex. R. Evid. 801, 802, and the hearsay-within-hearsay rule, *see* Tex. R. Evid. 805—which both prohibit the admission of out-of-court statements offered to prove their truth unless a hearsay

13

exception applies. Appellant, as the proponent of the evidence, bore the burden of articulating an exception or exclusion under which Torres's testimony or evidence about the alleged conversation would be properly admissible. *See White v. State*, 549 S.W.3d 146, 151–52 (Tex. Crim. App. 2018) (observing that proponent of evidence generally has burden of establishing admissibility of proffered evidence); *Pierson v. State*, 426 S.W.3d 763, 771 (Tex. Crim. App. 2014) (holding that appellant, as proponent of evidence, failed to carry burden to establish its admissibility, and therefore evidence was inadmissible); *see also Martinez v. State*, 178 S.W.3d 806, 815 (Tex. Crim. App. 2005) ("The State, as the proponent of the [hearsay] evidence, had the burden of demonstrating the applicability of that exemption or exception."); *White*, 549 S.W.3d at 160 (Keller, P.J., concurring) ("[O]nce hearsay is shown, the proponent bears the burden of establishing an exemption or exception to the hearsay rule."). Appellant offered no such exemption or exception; "impeachment" is not a hearsay exception.

"[E]videntiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Williams v. State*, 273 S.W.3d 200, 232 (Tex. Crim. App. 2008) (quoting *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002)); *accord Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). The Court of Criminal Appeals has explained that there are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: 1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and 2) when a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence that forms such a vital portion of the case effectively precludes the defendant from

14

presenting a defense. *Potier*, 68 S.W.3d at 659–62; *accord Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014); *Williams*, 273 S.W.3d at 232; *Walters v. State*, 247 S.W.3d 204, 221 (Tex. Crim. App. 2007); *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005); *Wiley*, 74 S.W.3d at 405. In the first scenario, "the constitutional infirmity is in the arbitrary rule of evidence itself." *Williams*, 273 S.W.3d 232 (quoting *Wiley*, 74 S.W.3d at 405); *accord Hammer v. State*, 296 S.W.3d 555, 561 n.8 (Tex. Crim. App. 2009). In the second scenario, "the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory." *Williams*, 273 S.W.3d at 232 (quoting *Wiley*, 74 S.W.3d at 405); *accord Hammer*, 296 S.W.3d at 561 n.8.

The rule barring the admission of hearsay is not arbitrary or disproportionate to its purpose, which is to prevent the admission of statements that are regarded as inherently unreliable. *See Fischer v. State*, 252 S.W.3d 375, 378 (Tex. Crim. App. 2008) ("The hearsay doctrine, codified in Rules 801 and 802 of the Texas Rules of Evidence, is designed to exclude out-of-court statements offered for the truth of the matter asserted that pose any of the four 'hearsay dangers' of faulty perception, faulty memory, accidental miscommunication, or insincerity."); *Guidry v. State*, 9 S.W.3d 133, 151 (Tex. Crim. App. 1999) (referencing "presumption of hearsay unreliability"); *State v. Kaiser*, 822 S.W.2d 697, 700 (Tex. App.—Fort Worth 1991, pet. ref'd) (observing that "[t]he concept of the inherent unreliability of hearsay evidence . . . long predates our constitution."). "State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial." *Scheffer*, 523 U.S. at 309. The rule excluding hearsay represents a reasonable restriction on the admission of evidence that

15

accommodates other legitimate criminal-trial interests, namely, ensuring the reliability of evidence. *See Potier*, 68 S.W.3d at 666.

Moreover, the record reflects that the proffered evidence was not "otherwise relevant, reliable evidence." The trial court's comments during the ongoing discussions about the admission of evidence of Torres's alleged conversation with M.G. reflect the court's concern that the out-of-court statements were not reliable—particularly, the portion of the statement regarding A.G.'s purported outcry of sexual abuse.[7] *See, e.g.*, *Valle v. State*, 109 S.W.3d 500, 506 (Tex. Crim. App. 2003) (holding that defendant's hearsay evidence that was not within exception and that did not bear "persuasive assurances of trustworthiness" was properly excluded). Thus, the application of the hearsay-within-hearsay rule was not arbitrarily or unjustly applied to appellant. *See Potier*, 68 S.W.3d at 662 ("[C]ourts are free to apply evidentiary rules that are not arbitrary and unjustified.").

While appellant contends that the hearsay rule should give way in favor of his right to put on a defense, "[t]he fact that appellant was not able to present his case in the form he desired does not amount to constitutional error when he was not prevented from presenting the substance of his defense to the jury." *Valle*, 109 S.W.3d at 507; *accord Potier*, 68 S.W.3d at 666. The exclusion of evidence about Torres's conversation with M.G. did not effectively preclude appellant from putting on his alternative-perpetrator source-confusion defense; other options were available to appellant.

---

[7] After the trial judge noted that A.G. denied being sexually abused by any person other than appellant and that "[w]e don't know if [A.G.] made the statement that the witness said she made," the judge observed that "there [are] a lot of problems with this statement, anyway."

16

First, M.G. was available as a witness at trial. Indeed, appellant recalled her as a witness during his case-in-chief to testify about the purported conversation with Torres. He could have asked her about A.G.'s outcry statement to her. Had appellant satisfied the statutory requisites, M.G. could have testified directly about A.G.'s outcry statement to her, and such testimony would have been substantive evidence of the alleged sexual abuse. *See Martinez*, 178 S.W.3d at 811 ("[The first adult a child confides in regarding the abuse] may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime."); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) ("Under Art. 38.072, by both the terms of the statute and by the legislative history, outcry testimony admitted in compliance with Art. 38.072 is admitted as an exception to the hearsay rule, meaning it is considered substantive evidence, admissible for the truth of the matter asserted in the testimony.").

Similarly, appellant could have called the mental-health providers who provided treatment, therapy, and counseling to A.G. Some of the medical records admitted at trial indicted that A.G. might have discussed, or perhaps mentioned, sexual abuse by her "stepfather/mother's boyfriend." Appellant maintained that the reference to "mother's boyfriend" was to Jaime. The testimony of these mental-health providers would have been admissible under the medical diagnosis or treatment exception to the hearsay rule. *See* Tex. R. Evid. 803(4) (establishing hearsay statements made for purposes of medical diagnosis or treatment); *Taylor*, 268 S.W.3d at 589–91 (discussing application of hearsay exception under Rule 803(4) in context of therapy provided by mental-health provider).

17

Appellant was not prevented from presenting the substance of his defense. *See Potier*, 68 S.W.3d at 665 (concluding that "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense"); *see e.g.*, *Segundo v. State*, 270 S.W.3d 79, 101–102 (Tex. Crim. App. 2008) (appellant's constitutional rights to present defense were not violated by trial court's exclusion of hearsay evidence where appellant "could present his defense without resort to unreliable hearsay"). Appellant could have presented his "alternative-perpetrator source-confusion" defense theory to the jury, albeit not in the form of inadmissable hearsay evidence. "A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Miller*, 36 S.W.3d at 507; *accord Henley*, 493 S.W.3d at 83; *Taylor v. State*, No. 03-03-00624-CR, 2006 WL 1649037, at *15 (Tex. App.—Austin June 16, 2006, pet. ref'd) (mem. op., not designated for publication). However, when evidence comes in an objectionable form, neither the Texas nor the United States Constitutions require its admission. *See Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010) (observing that constitutional right to "meaningful opportunity to present a complete defense" is qualified by requirement that defendant's evidence be relevant and not excluded by established evidentiary rule); *Renteria v. State*, 206 S.W.3d 689, 697 (Tex. Crim. App. 2006) (concluding that admission of constitutionally relevant evidence is not required if it is otherwise objectionable under state law).

The evidence appellant sought to admit about the alleged conversation between M.G. and his sister was inadmissible hearsay-within-hearsay. Thus, the trial court's exclusion of the

evidence on hearsay grounds was proper. *See Potier*, 68 S.W.3d at 666 (holding that hearsay rule, when properly applied, is valid limitation on defendant's evidence). Further, this is not a case in which an accused was hamstrung in presenting a defense by the invocation of an evidentiary principle that elevated form over substance. The trial court's ruling did not prevent the presentation of appellant's "source confusion" defense, for, as indicated, he could have presented the evidence through other witnesses with competent admissible evidence. *See, e.g.*, *Boyd v. State*, 643 S.W.2d 708, 709 (Tex. Crim. App. 1982) (observing that "the [evidentiary] rule applied today does not create an absolute bar to presentation of appellant's defense. He could have presented the witness in person to testify, or, by making proper demonstration of unavailability of that witness, he could have presented evidence of the defensive theory by alternative means. Exclusion of the evidence for failure to demonstrate the required predicate did not deny appellant his right to present a defense.").

Appellant did not attempt to offer admissible substantive evidence of an alternative perpetrator but rather merely evidence of a conversation about a conversation about an alleged alternative perpetrator. For the offered evidence to constitute substantive evidence of an alternative perpetrator, appellant had to demonstrate an applicable hearsay exemption or exception. He did not. Appellant's attempt to circumvent the hearsay rule by offering the evidence for the limited purpose of "impeachment" did not constitute an offer of substantive evidence of an alternative perpetrator.

Neither the hearsay rule embodied in Rules 801 and 802 nor the hearsay-within-hearsay in Rule 805 fall into the category of "arbitrary" rules proscribed by the Supreme Court, i.e., rules that excluded important defense evidence but that did not serve any

legitimate interests. *See, e.g.*, *Ferguson v. Georgia*, 365 U.S. 570 (1961); *Washington v. Texas*, 388 U.S. 14 (1967); *Chambers*, 410 U.S. 284; *Rock*, 483 U.S. 44. The application of the hearsay rule in this case was neither arbitrary nor unjust as the excluded evidence was not "otherwise relevant, reliable evidence." Moreover, the exclusion of the hearsay evidence did not effectively preclude appellant from putting on his "source confusion" defense. Consequently, the exclusion of evidence about Torres's conversation with M.G. did not violate appellant's right to present a defense. Thus, we cannot conclude that the trial court abused its discretion when it excluded the evidence. We overrule appellant's sole point of error.

## CONCLUSION

Having concluded that the trial court's exclusion of the hearsay evidence at issue did not deprive appellant of his constitutional right to present a defense, we affirm the trial court's judgment of conviction.

_____
Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed: April 25, 2019

Do Not Publish

20